**Maureen HUFFMAN, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**ELECTROLUX NORTH AMERICA, INC., Defendant.**

**Case No. 3:12CV2681.**

United States District Court, N.D. Ohio, Western Division.

Aug. 13, 2013.

John T. Murray, Leslie O. Murray, Michael J. Stewart, Murray & Murray, Sandusky, OH, Philip L. Dombey, Dombey & Hart, Perrysburg, OH, for Plaintiffs.

Jessica D. Miller, John H. Beisner, Nina Ramos Rose, Skadden, Arps, Slate, Meagher & Flom, Washington, DC, Bruce A. Khula, Philip M. Oliss, Squire Sanders (US), Cleveland, OH, for Defendant.

## ORDER

JAMES G. CARR, Senior District Judge.

This is a class action products liability suit against Electrolux North America, Inc. (Electrolux). Plaintiff asserts a variety of common-law and statutory products liability claims against Electrolux. Pending is Electrolux's partial motion to dismiss plaintiff's common-law products liability claims and strike plaintiff's class allegations (Doc. 9). Plaintiff has filed a response (Doc. 14) to which defendant has replied (Doc. 15).

This court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2), (6).

For the reasons that follow, I grant the motion to dismiss in part and deny it in part and deny the motion to strike the class allegations.

### Factual Background

In April, 2008, plaintiff Maureen Huffman bought a Frigidaire front-loading high efficiency washing machine from Lowes Home Improvement Center in Fremont, Ohio. Electrolux manufactured the washing machine.

Plaintiff's front-loading washer came with a one-year limited warranty:

> Your appliance is covered by a one year limited warranty. For one year from your original date of purchase, Electrolux will pay all costs for repairing or replacing any parts of this appliance that prove to be defective in materials or workmanship.

> \*   \*   \*   \*   \*   \*

> Claims based on implied warranties, including warranties of merchantability or fitness for a particular purpose, are limited to one year or the shortest period allowed by law, but not less than one year.

Plaintiff alleges that sometime in 2011 she noticed a pungent odor coming from the area of her washing machine. According to plaintiff, the smell became so severe that she had to contact a plumber to investigate the problem.

In July and August of 2012, Huffman complained to Electrolux and demanded it fix the problem. Electrolux suggested running the wash cycle using vinegar and/or using the hot water cycle and leaving the machine's door open to let it air out. None of the company's suggestions abated the odor.

On October 26, 2012, plaintiff filed this class action. She defines the class as:

All residents of Ohio who purchased a front loading washing machine manufactured, sold and/or distributed by defendant and purchased for primarily personal, family or household purposes in Ohio and not for resale.

According to plaintiff's estimate, tens of thousands of potential class members purchased front-loading Electrolux washers branded Crosley, Electrolux, Frigidaire, and White–Westinghouse. Plaintiff alleges that there are no relevant differences between the differently branded machines.

In her complaint, plaintiff lists eight causes of action. Plaintiff brings three common-law claims: 1) breach of warranty, 2) negligent design, and 3) negligent failure to warn. She asserts two statutory U.C.C. claims: 1) breach of express warranty, O.R.C. § 1302.26, and 2) breach of implied warranty of merchantability, O.R.C. § 1302.27. Plaintiff also asserts three claims under the Ohio Products Liability Act (OPLA), O.R.C. § 2307.71 *et seq.:* 1) failure to conform with a representation, O.R.C. § 2307.77, 2) statutory defective design/formulation O.R.C. § 2307.75, and 3) inadequate warning/ instruction, O.R.C. § 2307.76.

As a remedy for her OPLA strict liability claim, plaintiff requests compensatory damages for destroyed clothing and household goods and economic loss—the difference in value between what she paid for the washing machine and value of the machine with the alleged defect. For her common-law claims, plaintiff seeks only economic loss damages.

## Standard of Review

A complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) if it fails to allege facts sufficient to support a claim upon which a court can grant relief. Dismissal is also proper if no law supports a claim, or, if on the face of a complaint, there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697 (6th Cir.1978) (stating that courts may properly dismiss a complaint if the facts alleged show clearly that it is bared on statute of limitations grounds).

Considering only those well-pleaded facts, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court should dismiss the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Defendant bears the burden of demonstrating that the plaintiff has failed to state a claim for relief. *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007).

## Discussion

### A. Common–Law Products Liability Claims

The crux of the parties' dispute regarding plaintiff's common-law claims concerns whether plaintiff may simultaneously bring common-law products liability claims for

only economic loss damages and an OPLA claim for compensatory damages.

"Products liability refers to a manufacturer's or seller's liability for any damages or injuries suffered by a buyer, user, or bystander as a result of a defective product." Christopher Ernst, BALDWIN'S OHIO PRACTICE, OHIO TORT LAW, § 22.1 In 1988, the General Assembly enacted the OPLA, O.R.C. § 2307.71 *et seq.*, thereby codifying Ohio's common law of products liability.

Section 2307.73 of the Act enumerates the products liability cause of action:

A manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, all of the following:

(1) ... [T]he manufacturer's product in question was defective in manufacture ..., design ..., due to inadequate warning ..., or ... because it did not conform to a representation.

(2) A defective aspect of the manufacturer's product ... was a proximate cause of harm for which the claimant seeks to recover compensatory damages; [and]

(3) The manufacturer designed ... [or] produced ... the actual product that was the cause of harm for which the claimant seeks to recover compensatory damages.

As originally enacted, ambiguity existed within both the substantive and remedial portions of the Act. The Act did not explicitly state that it superseded all three pre-existing common law theories of products liability.[1] Specifically, it omitted any mention of manufacturer or supplier liability for negligence. The Act also failed to state whether its superseded common-law claims requesting only economic loss—not compensatory—damages.

The Ohio Supreme Court attempted to clarify the statutory ambiguities in two cases. In *Carrel v. Allied Prods. Corp.*, 78 Ohio St.3d 284, 289, 677 N.E.2d 795 (1997), the court, addressing whether the Act superseded common-law claims for negligence, held that "the common-law action of negligent design survive[d] the enactment" of the Act. *Id.*

In *LaPuma v. Collinwood Concrete*, 75 Ohio St.3d 64, 661 N.E.2d 714 (1996), the court discussed the remedial portions of the Act. Regarding common-law claims seeking only economic loss damages, the court held:

R.C. 2307.72 makes it clear that although a cause of action may concern a product, it is not a product liability claim within the purview of Ohio's product liability statutes unless it alleges damages other than economic ones, and that **a failure to allege other than economic damages does not destroy the claim, but rather removes it from the purview of those statutes.**

(Emphasis added).

In reaction to the court's decision in *Carrel*, the General Assembly amended the OPLA to make clear that it had intended for the Act to supersede common-law negligence claims. *See Wimbush v. Wyeth*, 619 F.3d 632, 639 (6th Cir.2010). In amendments effective April 7, 2005, the Assembly added a provision stating: "Sections 2307.71 to 2307.80 [2] are intended to

---

1. Under Ohio common-law one could prove products liability under one of three theories: 1) contract, 2) negligence, or 3) strict liability. Ernst *supra* at § 22.1.

2. Ohio Revised Code §§ 2307.74–2307.77 state the specific product liability theories: 1) defective manufacture or construction, O.R.C. § 2307.74, 2) defective design, O.R.C. § 2307.75, 3) defective/ inadequate warning,

abrogate all common-law product liability claims or causes of action." *Id.;* O.R.C. § 2307.71(B). Accordingly, it is now settled that the scope of a "products liability claim," as defined by OPLA, includes common-law negligence claims seeking compensatory damages. *Wimbush, supra* at 639.

The legislature did not similarly amend the remedial portions of the Act to address directly the Court's decision in *LaPuma.*

■ Defendant argues that if plaintiff chooses to bring a claim under OPLA, then she cannot simultaneously bring common-law product liability claims seeking only economic loss damages. According to defendant, plaintiff cannot carve out or preserve common-law claims by limiting the relief she seeks to economic loss damages.

Defendant further argues that plaintiff cites no authority to support her contention that she may seek both common-law and OPLA claims. Defendant contends plaintiff's cases show only that a plaintiff may bring common-law claims for economic loss damages instead of bringing a claim for compensatory relief under the OPLA. Those cases do not show, defendant argues, that plaintiff simultaneously can bring both types of claims.[3]

Plaintiff contends that bringing an OPLA claim does not preclude her from arguing, in the alternative, that defendant should be found liable for economic loss damages under common-law theories.

In support of its argument defendant cites *Mitchell v. Proctor & Gamble,* 2010 WL 728222 (S.D.Ohio). In *Mitchell,* plaintiff used Prilosec to treat heartburn. *Id.,* *1. After taking the medication he con-

tracted a food borne illness. *Id.* The plaintiff brought both an OPLA claim and a common-law negligent failure to warn claim against the manufacturer seeking: 1) compensatory damages for the amounts paid to treat his food borne illness, and 2) economic loss damages for the difference between what he paid for the drug and value of the drug he actually received. *Id.,* *4.

The court in *Mitchell* held that a plaintiff cannot bring a common-law negligence claim for economic damages where "the actionable conduct that forms the basis of the negligence claim ... is the same conduct that ... giv[es] rise to [the] 'products liability claim'." *Id.,* *4. The court further stated a plaintiff cannot "separate out his claims from the purview of the OPLA simply by claiming only economic losses." *Id.*

Plaintiff argues that the plain language of the Act supports her argument that she should be allowed to bring both claims. Plaintiff cites the Act's: 1) definition of "products liability claim" and 2) damages provision.

Section 2307.71(A)(13) of the Act defines "products liability claim" as:

> [A] claim or cause of action ... that seeks to recover **compensatory damages** from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from ...: (a) the design ... [or] production ... of that product; (b) any warning or ... lack of warning ... associated with that product; [or] (c) any failure of that

---

O.R.C. § 2307.76, and 4) non-conformance with representations, O.R.C. § 2307.77.

**3.** Defendant concedes that the OPLA does not destroy stand alone common-law product liability claims seeking only economic loss damages.

product to conform to any relevant representation or warranty.

(Emphasis added).

The provision in the Act covering damages states:

> Any recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not subject to sections 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state ...

(Emphasis added).

Plaintiff further argues that *Hoffer v. Cooper Wiring Devices, Inc.*, 2007 WL 1725317, *2 (N.D.Ohio) (stating "to the extent Plaintiff seeks damages for economic loss, his claims do not fall under the purview of the OPLA"), *In re Whirlpool Corp. Front–Loading Washer Prods. Liability Litigation*, 684 F.Supp.2d 942, 950 (N.D.Ohio 2009), *Hale v. Enerco Group, Inc.*, 288 F.R.D. 139 (N.D.Ohio 2012), and *Luthman v. Minster Supply*, 2008 WL 169999, *3, *7 (Ohio Ct.App.), support her contention that OPLA does not preempt common-law products cases seeking only economic relief.

Plaintiff also contends that she has a procedural right to assert her common-law and OPLA claims simultaneously. Plaintiff contends Federal Rules of Civil Procedure 8(d)(2), (3) explicitly allow parties to assert inconsistent alternative theories.[4]

Defendant's argument is problematic because it amounts to a command, contrary to Rule 8(d)(2), that plaintiff choose between economic damages and compensatory damages.

It is well-established that under the OPLA, claimants cannot recover only economic damages. *State Farm Mut. Auto. Ins. Co. v. Kia Motors Am., Inc.*, 160 Ohio App.3d 727, 734, 828 N.E.2d 701 (2005) (citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 768 N.E.2d 1136 (2002)); *Mitchell, supra*, 2010 WL 728222 at *3. But that does not mean that the OPLA precludes recovery of economic damages entirely: instead, the statute makes any recovery of economic damages contingent on an award of compensatory damages. O.R.C. § 2307.79(A) ("If a claimant is entitled to recover compensatory damages ... the claimant may recover ... for any economic loss that proximately resulted from the defective aspect of the product in question").

Given the statute's prohibition on recovering solely economic loss damages, the court's decision in *Mitchell*—that a plaintiff asserting an OPLA claim cannot bring common-law claims arising out of the same alleged defect—turns a plaintiff's recovery of economic loss damages into a gamble. The court's decision requires plaintiffs to choose between a relatively certain recovery of economic loss damages and the possible recovery of compensatory damages plus economic loss damages.[5]

Ohio law does not support circumscribing a plaintiff's right to the remedy of economic loss damages.[6] Under Ohio law,

---

4. Rule 8(d)(2) states, "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

5. In this case, as in most products liability cases, the reduced value of the good purchased is more obvious and less contested than the damage, if any, to other goods—*e.g.* the clothing and household items.

6. Although the defendant's reasoning does not totally deprive plaintiff of a remedy—she could choose to pursue only economic damages under a common-law products liability theory—I find the effect of forcing a plaintiff to choose between remedies to be equally

the right to a remedy, and more specifically, a consumer's right to recover solely economic loss damages is well-established.

The Ohio Constitution mandates that "[a]ll courts shall be open and every person for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law." OHIO CONST. Art. I § 16. Moreover, Ohio has a substantial body of law on the economic loss doctrine, which states that consumer plaintiffs may bring negligence claims for solely economic damages. *See In re Whirlpool, supra,* 684 F.Supp.2d at 949–950 (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.,* 42 Ohio St.3d 40, 45, 537 N.E.2d 624 (1989), *LaPuma, supra,* at 716; and *Midwest Ford, Inc. v. C.T. Taylor Co.,* 118 Ohio App.3d 798, 694 N.E.2d 114, 116–17 (1997)).

The General Assembly may, consistent with the Ohio Constitution, limit recovery of certain types of damages. *See Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 880 N.E.2d 420, 432 (2007) (affirming the General Assembly's power to limit non-economic damages to severe tort cases). However, I will not presume the General Assembly intended to circumscribe recovery of economic loss damages unless the language used in the statute clearly shows that intent. *State ex rel. Morris v. Sullivan,* 81 Ohio St. 79, 90 N.E. 146 (1909).

In making my decision, I have reviewed the plain language of the statute and attempted to construe the statute in its entirety—giving effect to all provisions, to the greatest extent possible. *In re Adoption of Baby Boy Brooks,* 136 Ohio App.3d 824, 830, 737 N.E.2d 1062 (2000).[7]

I find that OPLA's definition of "products liability claim," the Act's damage pro-

vision, and the General Assembly's failure to amend the remedial portion of the Act support plaintiff's contention that she should be allowed to bring both common-law and OPLA claims.

For the foregoing reasons, I deny defendant's motion to dismiss plaintiff's common-law products liability causes of action.

## B. U.C.C. Express Warranty Claim

The next issue I must consider is whether plaintiff's claim for breach of express warranty is barred because: 1) plaintiff fails to state a claim for breach of an express warranty; or 2) the warranty expired before plaintiff experienced any problems with her washing machine.

### 1. Stating a Claim for Breach of Express Warranty

Ohio law defines an express warranty as "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." O.R.C. § 1302.26(A)(1). To state a claim for breach of warranty under the U.C.C., plaintiffs must show: "1) a warranty existed; 2) the product failed to perform as warranted; 3) plaintiff provided defendant with reasonable notice of the defect; and 4) plaintiff suffered injury as a result of the defect." *Litehouse Products, Inc. v. A.M.I. Int'l, Ltd.,* 1984 WL 4539, *3 (Ohio Ct.App.).

Defendant argues plaintiff fails to state a claim for breach of its express repair and replace warranty because she failed to plead sufficiently a claim for defective manufacture. Defendant implicitly asserts that repair and replace warranties cover only manufacturing defects—not design defects.

---

unjustifiable and violative of her right to be made whole.

7. I also note the General Assembly has not amended the OPLA remedy provisions to abrogate the decision in *LaPuma.*

Plaintiff argues that her complaint sufficiently alleges both design and manufacturing defect, and that I should construe defendant's repair and replace warranty to cover the alleged defect.

Defendant cites *Whitt v. Mazda Motor of America*, 2011 WL 2520147 (Ohio Ct. App.) to support its proposition that repair and replace warranties do not cover design defects. In *Whitt*, Mazda provided car purchasers with a warranty that stated: "Mazda warrants that your new Mazda Vehicle is free from defects in material or workmanship subject to the following terms and conditions." *Id.*, *3. During discovery, a mechanic testified that the design of the plaintiff's car was the sole cause of the tire wear the plaintiff had experienced. *Id.* The court found the design defect of which plaintiff complained to be outside the scope of the repair and replace warranty and granted summary judgment for Mazda. *Id.*

Defendant next contends the factual allegations in plaintiff's pleadings are insufficient to state a claim for manufacturing defect. Citing *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839 (D.N.J.) and *Bruce Martin Constr., Inc. v. CTB, Inc.*, 2012 WL 6203112 (E.D.Mo.), defendant argues that design defect is the gravamen of plaintiff's complaint, and I should dismiss plaintiff's sparse and conclusory allegations of manufacturing defect.

In *Hughes*, the plaintiffs' alleged Panasonic had improperly programmed or designed a voltage control in their televisions resulting in rapid deterioration of picture quality. 2011 WL 2976839, *2. The parties disputed whether the complaint sufficiently alleged manufacturing defect. *Id.*, *18. The court dismissed the allegations that Panasonic breached its express limited re-

pair and replace warranty. *Id.*, *19. According to the court, the plaintiffs' single vague and conclusory allegation failed "to support a breach of express warranty claim based on a manufacturing defect theory." *Id.*

In *Bruce Martin*, the parties' disputed whether a grain bin unloader system suffered from a manufacturing defect. 2012 WL 6203112, *1. Plaintiff alleged that the unloader failed to empty grain bins completely because the system's wheel and backboard materials were too flexible and insufficiently durable. *Id.*, *3. Plaintiff's expert testified during discovery that the machine suffered from a design—not a manufacturing—defect. *Id.* The court, finding that the plaintiff lacked legal and factual support for its claim that defendant had breached the repair and replace warranty, granted summary judgement for the defendant. *Id.*, *5.

Although plaintiff cites no authority, she argues that the complaint's allegations of manufacturing defect satisfy the pleading requirements.[8] According to plaintiff, the "well-pleaded allegations plausibly relate to systematic problems with the "materials and workmanship" within even the narrowest reading of the express warranty." (Doc. 14 p. 9).

The factual allegations in plaintiff's complaint leave much to be desired. Nearly all of the facts forming the basis for plaintiff's claims are found in two short paragraphs of the complaint:

9. Plaintiff and members of the class have experienced, and continue to experience, moldy, mildew-like, or musty odors that emanate from their washing machines. The foul odors are proof of the actual problem; the Washing Machines fail to self-clean. As a result, detergent, fabric softeners, suds, skin,

8. Plaintiff alleges manufacturing defects in ¶¶ 8, 10, and 41 of her complaint (Doc. 1).

hair, oils, soils, and lint combine to form a filmy substance that develops within the Washing machines in places where consumers cannot remove it. Bacteria, mold, fungus, and bioorganic material feed and grow on and become incorporated into the mold and within a short time after being put to use the Washing Machines have film which produce offensive odors experienced by plaintiff and members of the class defined herein. 10. All Washing Machines have one or more serious, common, uniform design and/or manufacturing defects that cause the machines to accumulate mold and mildew within the machines, (b) produce a mold or mildew odor that permeates consumers' homes, (c) produce a mold or mildew odor on clothes and other items washed in the machines, and (d) be unusable in the manner, extent and purpose for which the machines were advertised, marketed, and sold. This defect (or set of defects) results at least in part from the Electrolux Front–Loading Washer's inadequate drainage system which allows water to stay in the lower portion of the outer tub inside the washer, in the pump area, behind the rubber gasket inside the door, and in other places in the machine.

Despite the brevity of the complaint, I do not find plaintiff's factual allegations fail to support a plausible claim for manufacturing defect.

Generally speaking, I would agree that a uniform malfunction across a large number of appliances would seem to indicate a bad design rather than mistaken assembly. However, contrary to defendants contention, a large number of bad machines does not, *ipso facto,* preclude a manufacturing defect theory. It is not implausible that discovery or expert analysis could reveal that an individual on an assembly line used improper parts or technique in manufac-

turing a large number of washing machines.

If the complaint only contained paragraph nine—alleging a failure to self-clean—I would be inclined to find this case sufficiently analogous to *Hughes* and *Bruce Martin* to dismiss plaintiff's claim for manufacturing defect. The complaint, however, goes on to allege another set of possible defects, the collection of water in various parts of the machine including: "the lower portion of the outer tub inside the washer, the pump area, behind the rubber gasket inside the door, and in other places in the machine."

I find the second set of alleged defects to assert plausible facts supporting a claim of either a manufacturing or a design defect. A factory employee's installation of improper rubber gaskets—as opposed to improper design—could have caused or contributed to the alleged mold problem. For that reason, the nature of the defect plaintiff alleges is distinct from the improper programming allegation in *Hughes* and the bad materials claim in *Bruce Martin*—it lends itself to both defective design and manufacture theories. *Bruce Martin* is further distinguishable because in that case plaintiff's own expert opined that the unloader systems suffered from a design defect.

Accordingly, I decline to dismiss the U.C.C. breach of express warranty claim at this stage.

## 2. Expiration and Essential Purpose of Repair and Replace Warranty

Parties may limit the type of remedies available for breach of warranty as well as the time available for commencing suit. O.R.C. § 1302.98(A); O.R.C. § 1302.93(A)(1). However, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedies may be had as provided [else-

where in the U.C.C.]". O.R.C. § 1302.93(B).

■ " 'Repair or replacement' remedies are designed to give the seller an opportunity to make the goods conforming ..." *Chemtrol Adhesives, Inc., supra,* 42 Ohio St.3d at 56, 537 N.E.2d 624 (1989) (citations omitted). In *Goddard v. General Motors Corp.,* 60 Ohio St.2d 41, 45, 396 N.E.2d 761 (1979), the Ohio Supreme Court explained the circumstances under which a repair and replace remedy fails of its essential purpose:

> Although in most cases a limited remedy may be fair and reasonable, and satisfy the reasonable expectations of a ... purchaser ... when a seller is unable to fulfill its warranted obligation to effectively repair or replace defects in goods ... the buyer is deprived of the benefits of the limited remedy and it therefore fails its essential purpose.

Defendant contends its warranty had expired before the machine malfunctioned, and the latent nature of the design defect does not toll the warranty period.

Plaintiff asserts that defendant's one-year warranty period is unenforceable. This is so, according to plaintiff, because the mold is undetectable for the first three years of operation and a one-year warranty period would cause the warranty to fail of its essential purpose.

To support its contention that any express or implied warranties had expired before plaintiff experienced problems, defendant cites *Buckeye Resources, Inc. v. DuraTech Indus. Int'l, Inc.,* 2011 WL 5190787, *3–4 (S.D.Ohio) (holding plaintiff was barred from seeking remedy because express warranty expired in accordance with time limits elucidated in the limited repair and replace warranty); *Sonner v. Mullinax Ford North Canton, Inc.,* 2000 WL 700313, *2 (Ohio Ct.App.) (same).

Plaintiff contends *Lincoln Elec. Co. v. Technitrol, Inc.,* 718 F.Supp.2d 876 (N.D.Ohio 2010), supports her argument that a factual question exists regarding the enforceability of the one-year warranty period. In *Lincoln,* plaintiff worked with an engineering company to design parts for welding machines. *Id.,* 877–78. After plaintiff received the parts, it had to incorporate them into welding machines. Once plaintiff incorporated the parts, the machines malfunctioned. *Id.* The engineering company had disclaimed all remedies except refund, repair, or replacement within thirty days of receipt. *Id.* The court found that whether the thirty-day warranty period caused the limited warranty to fail of its essential purpose—because thirty days was too short a period for plaintiff to receive, incorporate, and test the product—presented a question for the factfinder. *Id.,* 881–82. *Cf. Protek, Ltd. v. Lake Erie Screw Corp.,* 2005 WL 2995127, *11–12 (Ct.App.Ohio) (stating that when defects arose within the warranty period, chronic and late delivery of replacement product caused repair and replace warranty to fail of its essential purpose).

The cases defendant cites are not on point. They fail to address plaintiff's main contention: the necessarily delayed manifestation of the mold defect—its three-year latency—renders a one-year limited warranty meaningless.

The courts in *Buckeye* and *Sonner* did not address whether a latent defect nullifies a warranty period because latency was not at issue. No biological or practical limitation prevented the general mechanical failures at issue in the cases from occurring during the limited warranty period. The bearings at issue in *Buckeye,* or the engine in *Sonner,* could have malfunctioned during the warranty period. Had this occurred, the defendant manufacturers would have been responsible for re-

pairing or replacing any defective parts. Accordingly, the cases do no support defendant's contention that Ohio courts regularly find warranty claims involving latent defect to be time barred.

Although plaintiff's cases come closer to the facts of this case, they are also distinguishable. *Lincoln* concerned a considerably shorter thirty-day warranty period. While *Protek* concerned defects arising within the warranty period. Moreover, in both *Lincoln* and *Protek* the repair or replace warranty was exclusive—it disclaimed liability under any other theory.

In this case, plaintiff: 1) received a standard one-year warranty; 2) failed to report any defects within the period; and 3) may still pursue identical relief via other non-warranty claims.

I find unpersuasive plaintiff's attempt to construe broadly the court's narrow holding in *Lincoln*. In that case, it was patently unreasonable for an engineering company to apply a thirty-day warranty period to parts which it knew needed to be incorporated into other machines.

■ In contrast, in this case, it was not unreasonable for the defendant to place a one-year limit on its general repair or replace warranty. Unlike *Lincoln*, the defendant in this case could have been responsible for fixing any number of machine problems during the warranty period. Accordingly, the warranty cannot be considered meaningless—it did not make impossible or even unlikely the promised repair and/or replacement.

■ Ordinarily, the trier of fact should determine whether a warranty fails of its essential purpose. *Chemtrol, supra,* 42 Ohio St.3d at 56, 537 N.E.2d 624. However, "if there is no evidence on which to base a finding that [a manufacturer] was unable or unwilling to repair and/or replace in a reasonable time [a covered de-

fect occurring during the warranty period]", it is "unreasonable as a matter of law to conclude that the remedy failed of its essential purpose." *Id.*

In this case, the problems with plaintiff's washing machine did not arise during the warranty period. Moreover, the warranty: 1) set a reasonable one-year time limit for claims; 2) did not preclude all claims; and 3) was not exclusive. Accordingly, I find, as a matter of law, that the limited warranty period in this case did not cause the warranty to fail of its essential purpose.

### 3. Commencement of Warranty Period for a Claim for Breach of Repair and Replace Warranty

As I have decided to uphold the one-year warranty period, the one year limit on the repair/replace warranty will bar plaintiff's claim for breach of express warranty unless she can show that the warranty period began less than one year before she filed suit.

■ Plaintiff contends the warranty period did not start until August or July of 2012, when she complained of the defect to defendant. Plaintiff further argues that because she filed suit within months of bringing the defect to defendant's attention, her complaint is not time barred.

To support her argument that the warranty period did not begin until the defendant refused to perform, plaintiff cites *Allen v. Andersen Windows, Inc.,* 913 F.Supp.2d 490, 504 (S.D.Ohio 2012) (stating that "unlike claims for breach of warranty based upon the condition of the product, a claim for breach based upon the failure to 'repair or replace' does not accrue upon delivery: the promise to repair is an independent obligation that is not breached until the seller fails to repair.") (citing *Cosman v. Ford Motor Co.,* 285 Ill.App.3d 250, 220 Ill.Dec. 790, 674 N.E.2d 61, 68 (1996); *Versico, Inc. v. Engineered*

*Fabrics Corp.,* 238 Ga.App. 837, 520 S.E.2d 505, 509–10 (1999); *Nationwide Ins. Co. v. General Motors Corp.,* 533 Pa. 423, 625 A.2d 1172, 1179–81 (1993) (Zappala, J., dissenting)).

Defendant's reply brief did not respond to plaintiff's citation of and reliance on *Andersen Windows.* Plaintiff's argument, which I find persuasive, thus stands unrebutted. Because plaintiff alleges having demanded that the defendant fix the problem in July or August of 2012 and filed suit within a year thereafter, I overrule defendant's motion to dismiss the claim for breach of the warranty to repair or replace defective parts.

### C. U.C.C. Implied Warranty Claim

Defendant contends the implied warranty of merchantability expired before plaintiff experienced problems with her washing machine. Defendant further argues I should dismiss plaintiff's claim for breach of the implied warranty of merchantability because plaintiff was not in privity of contract with defendant.

Plaintiff argues that Lowe's acted as defendant's agent. For this reason, plaintiff contends she stands in privity of contract with defendant.

■ The express terms of the warranty state that it limits all claims for breach of the implied warranty of merchantability to one year from the date of purchase. Plaintiff fails to present any argument regarding the invalidity of the one-year warranty period as applied to the implied warranty of merchantability.

The warranty period presents an insurmountable bar to plaintiff's ability to move forward with her implied warranty claim. *Buckeye Resources, Inc., supra,* 2011 WL 5190787, *3–4; *Sonner, supra,* 2000 WL 700313, *2. As expiration of the implied warranty is dispositive on the issue, I decline to reach the issue of privity.

### D. Motion to Strike Class Allegations From the Complaint

A district court has broad discretion to decide whether to certify a class. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996). Federal Rule of Civil Procedure 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

In addition to satisfying the requirements under Fed.R.Civ.P. 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b). *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ——, 131 S.Ct. 2541, 2548, 180 L.Ed.2d 374 (2011). Plaintiff bears the burden of proving that the class certification elements are satisfied. *In re Am. Med. Sys., Inc., supra,* 75 F.3d at 1079.

Plaintiff's complaint alleges that certification is proper under Fed.R.Civ.P. 23(b)(3), which requires that I find, "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

■ Before granting class certification, I must conduct a "rigorous analysis." *Dukes, supra,* 564 U.S. at ——, 131 S.Ct. at 2551. Ordinarily, conducting a "rigorous analysis" requires consideration of evidence from the parties on the issue of the maintainability of the class action. *In re*

*Am. Med. Sys., Inc., supra*, 75 F.3d at 1079. It may be appropriate, however, to strike class allegations if statements of law or fact in a complaint clearly show maintaining a class action will be impracticable. *See Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 946–49 (6th Cir.2011) (granting motion to strike class allegations where complaint showed that applicability of the consumer laws of numerous states and variety of factual allegations respecting fraudulent programs and injuries would preclude class certification).

Defendant contends I should strike plaintiff's class allegations. According to defendant, the pleadings definitively establish that plaintiff's class allegations are fatally defective. This is so, defendant argues, because plaintiff's OPLA claims require individualized proof of causation and damages.

Defendant cites *Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1152 (N.D.Cal.2010); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, 275 F.R.D. 270, 276–77 (S.D.Ill.2011); *Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 202 (W.D.Tex.2004); *Sanders v. Johnson & Johnson, Inc.*, 2006 WL 1541033, *10 (D.N.J.2006); *Evans v. Lasco Bathware, Inc.*, 178 Cal.App.4th 1417, 101 Cal.Rptr.3d 354, 366 n. 7 (2009); and *Camenson v. Milgard Mfg.*, 2008 WL 2381904, *3 (Ct. App.Cal.2008), to support his argument that individualized proof of injury and causation under OPLA makes plaintiff's claims *de facto* uncertifiable.

Plaintiff contends the Sixth Circuit's decision in *Glazer, et al. v. Whirlpool Corp.*, 678 F.3d 409 (6th Cir.2012), strongly supports class certification. Plaintiff also argues I should postpone determination of the issue until the parties have completed discovery as to certification. According to plaintiff, this case is distinguishable from the cases defendant cites because her complaint contains no allegations of fact or law, which would doom her class claim. She contends her pleading, standing alone, provides no basis for deciding the class certification issue now.

In *Glazer, supra*, named plaintiffs, Gina Glazer and Trina Allison, had purchased different high efficiency Whirlpool-manufactured washing machine models. 722 F.3d at 846–47. Within six to eight months after their purchases, plaintiffs noticed a pungent odor emanating from their machines and clothing that had been washed in the machines. *Id.* Both complained to Whirlpool. *Id.* In response, Whirlpool told the owners to leave the machine doors open, manually clean moldy parts, and use the company's special cleaning tablets to help alleviate the problem. *Id.*

When none of Whirlpool's suggestions remedied the mold or odor problems, plaintiffs in *Glazer* filed a class action against Whirlpool. *Id.*, 844–45. The complaint alleged that "design defects in Whirlpool's Duet®, Duet HT®, Duet Sport®, and Duet Sport HT® front-loading washing machines allow mold and mildew to grow in the machines, leading to ruined laundry and malodorous homes." *Id.*

After class discovery and extensive expert testimony, the district court certified a liability class of Ohio consumers who were bringing legal claims for tortious breach of warranty, negligent design, and negligent failure to warn. *Id.* 844–45, 846–47, 847–48. The court reserved proof of damages for individual determination. It declined, however, to certify a class on plaintiffs' separate OPLA claim. *Id.* at 844–45, 849–50. Whirlpool appealed the district court's certification order, and the Sixth Circuit affirmed. *Glazer et al. v. Whirlpool*, 722 F.3d 838 (6th Cir.2013).

Since the parties submitted their briefs, the Supreme Court decided *Comcast Corp. v. Behrend,* —— U.S. ——, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013). Shortly thereafter, the Supreme Court granted Whirlpool's petition for a writ of certiorari, vacated the judgment, and remanded the case back to the Sixth Circuit for further consideration in light of *Comcast. Whirlpool Corp. v. Glazer,* —— U.S. ——, 133 S.Ct. 1722, 185 L.Ed.2d 782 (2013) (mem.). On July 18, 2013, the Sixth Circuit rendered a decision re-affirming its prior decision to uphold the district court's class certification. *Glazer, supra,* 722 F.3d 838.

The Sixth Circuit's most recent decision in *Glazer* is dispositive on the issue of whether it is proper to strike plaintiff's class allegations.

In re-affirming its prior decision, the Sixth Circuit began by noting the lower court's thorough inquiry into plaintiff's class allegation. *Id.,* 852 (stating that the "district court probed behind the pleadings, considering all of the relevant documents that were in evidence") (citation omitted).

Respecting the record on which the lower court based its decision, the court noted:

> The record contained extensive material including: numerous corporate documents; extensive affidavits from the parties' experts and witnesses; Whirlpool's successful evidentiary motion practice; and the court's grant of Whirlpool's motion to present live testimony at the class certification hearing—a right that Whirlpool subsequently chose not to exercise.

*Id.*

The court then analyzed whether the necessity of individualized proof of causation and damages should have kept the district court from finding commonality, predominance, and superiority. The court ultimately rejected Whirlpool's argument that the variety of washing machine models and laundry habits rendered uniform proof of causation impracticable. *Id.,* 852–55. The court also rejected Whirlpool's argument that the necessity of proving individualized damages precluded class certification. *Id.*

"[T]here need be only one common question to certify a class." *Id.,* 853.[9] Moreover, "[n]o matter how individualized the issue of damages may be," determination of damages "may be reserved for individual treatment with the question of liability tried as a class action." *Id.,* 854 (citation omitted).

Addressing the Supreme Court's decision in *Comcast,* the Sixth Circuit noted that the district court in that case "certified a liability *and* damages class under Rules 23(a) & (b)(3)." *Id.,* 859 (emphasis in original). Accordingly, in cases "[w]here determinations on liability and damages have been bifurcated, *see* Fed. R.Civ.P. 23(c)(4), the decision in *Comcast*—to reject certification of a liability and damages class because plaintiffs failed to establish that damages could be measured on a classwide basis—has limited application." *Id.,* 860. "[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." *Id.,* 862.

The court concluded by expressing their opinion that "class certification was the superior method to adjudicate th[e] case

---

9. The court noted that under Ohio law breach of warranty and OPLA product liability claims are nearly indistinguishable. *Id.*

fairly and efficiently." *Id.* On that point the court concluded:

> Use of the class method is warranted particularly because class members are not likely to file individual actions-the cost of litigation would dwarf any potential recovery. *See Amgen [Inc. v. Connecticut Retirement Plans and Trust Funds,* — U.S. —], 133 S.Ct. [1184] at 1202 [185 L.Ed.2d 308 (2013)]; *Amchem Prods., Inc. [v. Windsor],* 521 U.S. [591] at 617, 117 S.Ct. 2231 [138 L.Ed.2d 689 (1997)] (finding that in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all'"); *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) (noting that "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits" because of litigation costs).

*Id.*

In light of the Sixth Circuit's most recent opinion in *Glazer,* I find defendant's motion to dismiss the class allegations is premature and presently without foundation. The factual allegations in this case are virtually indistinguishable from those in *Glazer.* To determine whether variation in machine models—or other factual issues—preclude uniform proof of causation, (or for some reason cannot be handled *via* subclasses), the parties must take discovery and present evidence on the pertinent issues.

Nothing follows from the fact, which defendant points out, that the district court in *Glazer* did not certify a class on the plaintiffs' OPLA claims. Defendant has failed thus far to put forward any presently persuasive reason to find that plaintiffs cannot bring classwide OPLA claims. Defendant's main contention focuses on individualized proof of compensatory damages. However, as the Sixth Circuit noted, bifurcating the issues of liability and damages at trial may remedy problems surrounding the individualized proof of damages.

Absent further insight into the facts, I am without a foundation rigorously to analyze and determine the appropriateness of class certification. Nothing in plaintiff's complaint clearly shows that plaintiff cannot successfully apply for certification of a class or sub-classes of plaintiffs who suffered common mold problems. Whether that effort succeeds awaits further proceedings.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Defendant's motion to dismiss (Doc. 9) is denied in part and granted in part.

2. Defendant's motion to strike plaintiff's class allegations is denied.

The Clerk shall schedule a status/scheduling conference.

So ordered.