# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1022

_____

Bruce Martin Construction, Inc.

*Plaintiff - Appellant*

v.

CTB, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: September 25, 2013
Filed: November 4, 2013

_____

Before WOLLMAN, BEAM, and SMITH, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Bruce Martin Construction, Inc. (Bruce Martin), appeals two district court[1] orders, one dismissing its negligent misrepresentation claim against CTB, Inc., on the

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

pleadings, the other granting summary judgment to CTB on Bruce Martin's breach of warranty claim. We affirm.

## I.

Grain storage can be a dangerous, physically demanding process. When the time comes to unload grain from a cylindrical bin, most of the grain (some 80 percent) will flow out the bottom of the bin by sheer force of gravity. Eventually, however, the grain will reach its angle of repose, at which point gravity yields to granular friction and the grain forms a conic valley around the bin's central well. At this point, a worker must enter the bin and shovel or otherwise move the remaining grain towards the bin's center, where it will enter the well and be moved outside the bin by an auger placed below the bin's floor. Hazards await the worker inside the bin. Damp clumps of grain stuck to the walls of the bin can crumble and fall, causing a chain reaction and burying the worker in cascading grain. Or the grain beneath the worker's feet can give way, sucking the worker down towards the center well. Even breathing the air inside a bin can be unsafe, since many grains produce noxious gasses. Since 2007, at least eighty farm workers have died while working inside bins. <u>See</u> John M. Broder, Silos Loom as Death Traps on American Farms, N.Y. Times, October 28, 2012, at A1.

The Brock Harvest-Time Bin Unload System was designed to remedy this problem by automating the process of unloading grain from bins. The "power sweep," as it is known, consists of a metal auger, semi-enclosed by a tube, extending horizontally from the bin's central well to its perimeter. Propelled by a rubber tire at its far end, the sweep rotates around the floor of the bin like the hand of a clock, while the flights of the rotating auger pull the grain towards the central well, where it flows to the underlying auger, as described above. This mechanized process eliminates the need for a person to enter the bin. The diagram below depicts the Brock Harvest-Time Bin Unload System.



From 2005 to 2008, Bruce Martin purchased seventy-nine of these sweeps from CTB and resold seventy-four of them to its customers in Missouri, Arkansas, Tennessee, and Kentucky. The sweeps came with an express warranty that covered "defects in material or workmanship"; CTB expressly disclaimed all other warranties. Approximately eight months after it sold the first sweep, Bruce Martin began receiving complaints from its customers that the sweeps did not work. The steel with which the sweeps were made was too flimsy to penetrate many of the grains grown in the region and the rotating tire would sit and spin without advancing the sweep. To effectively operate the sweep, a worker had to enter the bin and physically push the sweep along, which of course defeats the purpose of having an automated sweep system.

Bruce Martin sued CTB for negligent misrepresentation and breach of express warranty. The district court dismissed the negligent misrepresentation claim on the pleadings after concluding that Missouri's economic loss doctrine barred the claim.

The district court then granted CTB's motion for summary judgment on the breach of warranty claim, finding that Bruce Martin had alleged a defect in the design of the sweeps that was not covered by CTB's warranty against "defects in material and workmanship."

## II.

Bruce Martin alleges that the district court erred in concluding that Missouri's economic loss doctrine precluded its negligent misrepresentation claim. Our court's recent decision in Dannix Painting, LLC v. Sherwin-Williams Co., No. 13-1025, slip op. at 2 (8th Cir. Oct. 21, 2013), forecloses this argument. The Dannix court predicted that the Supreme Court of Missouri, if confronted with the issue, would hold that the economic loss doctrine bars negligent misrepresentation claims. Accordingly, if Bruce Martin is to recover from CTB for the defective sweeps, it must be on the basis of the warranties set forth in the contract.

## III.

We turn then to Bruce Martin's allegation that the district court erred in granting summary judgment to CTB on Bruce Martin's breach of express warranty claim. Bruce Martin argues that CTB's warranty against "all defects in material and workmanship" covers the defective materials used to build the sweeps. We review a district court's grant of summary judgment *de novo*. St. Martin v. City of St. Paul, 680 F.3d 1027, 1032 (8th Cir. 2012) (citing Figg v. Russell, 433 F.3d 593, 597 (8th Cir. 2006)). Indiana law controls our analysis because (1) the parties agreed that it would govern the interpretation of the contract, and (2) Indiana contract law does not contravene a fundamental public policy of Missouri. See Kagan v. Master Home Prods., Ltd., 193 S.W.3d 401, 407 (Mo. Ct. App. 2006).

While no Indiana court has defined the terms "defects in material or workmanship" or "design defect," case law from outside Indiana reflects an understanding that defects in material and workmanship refer to departures from a product's intended design while design defects refer to the inadequacy of the design itself. See Lombard Corp. v. Quality Aluminum Prods. Co., 261 F.2d 336, 338 (6th Cir. 1958) ("A defect in material is a defect in quality. . . . Design, on the contrary, involves the overall plan of construction and operation.").[2]

Indiana products liability law also adopts the distinction between design and manufacture. See Hoffman v. E.W. Bliss Co., 448 N.E.2d 277, 281 (Ind. 1983) ("In order for the plaintiff to recover, the defect can be that the product was defectively designed, defectively manufactured, or that the manufacturer failed to supply adequate warnings or instructions as to the dangers associated with its use."). While products liability in tort is distinct from breach of a contractual warranty, the two doctrines are conceptually similar in that both concern liability for product defects. Because both Bruce Martin and CTB are merchants of dangerous goods who are likely familiar with products liability law, it seems reasonable that the parties may have implicitly incorporated understandings from products liability doctrine into their contract. Indeed, many courts have drawn direct analogies between products liability

_____

[2]See also Hughes v. Panasonic Consumer Elecs. Co., No. 10-846 (SDW), 2011 WL 2976839, at *19 (D.N.J. July 21, 2011); Cali v. Chrysler Grp., LLC, No. 10 Civ. 7606(JSR), 2011 WL 383952, at *2 (S.D.N.Y. Jan. 18, 2011), aff'd 426 F. App'x 38 (2d Cir. 2011) (per curiam) ("'Design' refers to 'the arrangement of elements that make up . . . a machine,' and 'the process of selecting the means and contriving the elements, steps, and procedures for producing what will adequately satisfy some need.' . . . The terms 'material,' 'workmanship,' or 'factory preparation,' on the other hand, refer to the mechanical process of implementing that design." (citation omitted)); Brothers v. Hewlett-Packard Co., No. C-06-02254 RMW, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007); Teuful v. Wienir, 411 P.2d 151, 154 (Wash. 1966) (concluding that a design defect occurred where "any properly constructed [product] would have presented the same problem").

and contractual warranties. See, e.g., Huffman v. Electrolux N. Am., Inc., No. 3:12CV2681, 2013 WL 4428803, at *6 (N.D. Ohio Aug. 13, 2013); Rice v. Sunbeam Prods., Inc., No. CV 12-7923-CAS-(AJWx), 2013 WL 146270, at *12 (C.D. Cal. Jan. 7, 2013) ("[T]he phrase 'free from defects in material and workmanship' in defendant's limited warranty refers only to manufacturing defects, not design defects."); Hughes, 2011 WL 2976839, at *19 ("'[W]orkmanship' covers the Televisions' defective computer programming, which is a manufacturing defect."). Thus, case law supports the view that, where a product is manufactured correctly but designed inappropriately, the defect is one of design and not "material or workmanship."

Bruce Martin's own expert agreed with this characterization. He repeatedly referred to the problems with the sweeps as defects in design. Indeed, Bruce Martin itself does not dispute that the sweeps conformed to their intended design in every respect. Rather, Bruce Martin asserts that the design was defective in calling for unsuitable materials, essentially arguing that the defect is both one of design and one of material. This admission is ultimately fatal to Bruce Martin's warranty claim, for a design defect cannot also be a defect in material and workmanship. See Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc., 508 F. App'x 180, 184 (3d Cir. 2012); Orthoflex, Inc. v. ThermoTek, Inc., Nos. 3:11-CV-0870-D, 3:10-CV-2618-D, 2013 WL 4045206, at *8 (N.D. Tex. Aug. 9, 2013) ("Th[e] phrase ['material and workmanship'] does not cover design defects."); Rice, 2013 WL 146270, at *11; Horvath v. LG Elecs. Mobilecomm U.S.A., Inc., No. 3:11-CV-01576-H-RBB, 2012 WL 2861160, at *5 (S.D. Cal. Feb. 13, 2012) ("An express warranty covering 'materials and workmanship' does not include design defects."); Cali, 2011 WL 383952, at *2. Were it otherwise, a warranty for "material and workmanship" would obviate the need for a design warranty entirely. Because all products are the result of materials and workmanship, any product defect is potentially attributable to one or the other. Bruce Martin's reading of the warranty would thus extend coverage to

any product defect.  This cannot be what the parties contemplated.  Clearly, they intended to limit the warranty in some way by specifying that it applied only to "material and workmanship." Thus, the district court did not err in granting summary judgment to CTB on Bruce Martin's breach of warranty claim.

IV.

The judgment is affirmed.

_____