# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-3648
_____

GWG DLP Funding V, LLC; Wells Fargo Bank N.A., solely in its capacity as
Securities Intermediary

*Plaintiffs - Appellants*

v.

PHL Variable Insurance Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 18, 2022
Filed: December 6, 2022
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

GWG DLP Funding V, LLC was the policyowner and beneficiary of a life insurance policy issued by PHL Variable Insurance Company. After GWG transferred beneficiary rights and ownership to Wells Fargo, PHL terminated the policy. GWG and Wells Fargo disputed the termination, and the parties attempted to settle the dispute. After some negotiations, the insured died, and PHL refused to

honor the alleged agreement the parties had reached. GWG and Wells Fargo sued PHL for breach of contract and breach of the covenant of good faith and fair dealing and sought a declaratory judgment that prevents PHL from terminating the policy. The plaintiffs appeal the district court's[1] dismissal of their claims. We affirm.

**I.**

In 2007, PHL issued a policy insuring the life of Barry Keller. The policy contained a $500,000 death benefit to be paid out upon Keller's death. It also contained a guarantee of the death benefit, allowing the policy to remain in effect when it otherwise might be in default. The policy stated that the death-benefit guarantee would terminate if a third party without an insurable interest became the policyowner or beneficiary. The policy terminates if a policyholder does not pay required premiums within a sixty-one-day grace period after default. If a policy terminates, policyowners may pay the required premium payment to reinstate the policy but only "while the Insured is alive."

At some point, GWG became the policyowner and beneficiary of the policy. GWG is a publicly traded financial institution with substantial investments in the secondary life insurance market. In September 2020, GWG transferred ownership and beneficiary rights to Wells Fargo and notified PHL. As a result, PHL informed Wells Fargo that the death-benefit guarantee terminated and that Wells Fargo would need to make additional premium payments to prevent the policy from lapsing. PHL claims that it subsequently sent Wells Fargo two notices stating the policy was in default and in danger of lapsing unless additional premium payments were made. GWG and Wells Fargo allege they never received either notice. Because the plaintiffs made no additional premium payments, PHL terminated the policy.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

-2-

The parties disputed whether the death-benefit guarantee and policy should have terminated. In an attempt to settle, on February 1, 2021, PHL offered to restore the policy in return for a grace payment, higher premium payments, and the plaintiffs' agreement that the death-benefit guarantee remain terminated. On February 5, the plaintiffs agreed by email to the terms of PHL's offer, confirming they "will agree to reinstatement on the conditions below and will be in contact shortly."

PHL then drafted an agreement to memorialize the terms of the alleged February 5 agreement. The draft agreement contained many terms not mentioned in the emails, for example, a warranty provision requiring the plaintiffs to guarantee that the insured was alive "as of the Effective Date of this Agreement," which was February 24, 2021. The plaintiffs signed and returned the draft agreement to PHL on February 26. PHL responded that its counsel would send its signed version and provided instructions for sending payment. The plaintiffs paid that day. On March 1, the plaintiffs learned that the insured had died and so informed PHL. PHL then refused to sign the draft agreement.

The plaintiffs sued PHL in Minnesota state court, bringing claims for breach of contract and breach of the covenant of good faith and fair dealing. They also requested a declaratory judgment that PHL could not lawfully terminate the policy. PHL removed the case on diversity grounds and moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The plaintiffs opposed the motion and, in the alternative, requested leave to amend the complaint if the district court dismissed the complaint. Attached to the motion-to-dismiss briefs were the policy, the emails exchanged in early February, and the draft agreement. The district court granted PHL's motion and dismissed the plaintiffs' complaint with prejudice. The plaintiffs appeal.

## II.

We review Rule 12(b)(6) dismissals *de novo.  Doe v. N. Homes, Inc.*, 11 F.4th 633, 637 (8th Cir. 2021).  "Under Rule 12(b)(6), a complaint fails to state a claim upon which relief can be granted if the plaintiff fails to plead factual content that, if true, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks omitted).  We must "grant all reasonable inferences from the pleadings in favor of the non-moving party."  *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012).  At the motion-to-dismiss stage, we can consider "documents necessarily embraced by the complaint," including "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings."  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).  Here, the life insurance policy, the draft agreement, and the communications between the parties in early February qualify as such.

### A.

We first address the plaintiffs' breach-of-contract claim, which is based on the allegation that a contract had been formed during the February email exchanges before the draft agreement was written.  In this diversity case, the parties agreed to apply Connecticut substantive law,[2] so the district court applied Connecticut law.  We do too.  *See Kostelec v. State Farm Fire & Cas. Co.*, 64 F.3d 1220, 1224 (8th Cir. 1994) (applying Missouri law because the parties and district court applied Missouri law).  To determine whether "parties intended legally to bind themselves prior to the execution of a formal contract is to be determined from (1) the language used, (2) the circumstances surrounding the transaction, and (3) the purpose that [the

_____

[2]The draft agreement specified that Connecticut law applies, and though the plaintiffs noted to the district court that the draft agreement was not binding and that arguably Minnesota or Connecticut law applied to the alleged February 5 agreement, they agreed to apply Connecticut law.

parties] sought to accomplish." *Fowler v. Weiss*, 546 A.2d 321, 323 (Conn. App. Ct. 1988).

"[If] any essential matters are left open for further consideration, [a] contract is not complete." *Geary v. Wentworth Labs., Inc.*, 760 A.2d 969, 973 (Conn. App. Ct. 2000). "[A]n essential term is one without which a party would not have entered into an agreement." *Squillante v. Cap. Region Dev. Auth.*, 266 A.3d 940, 950-51 (Conn. App. Ct. 2021) (concluding that "the letter was in the nature of an 'agreement to agree,' rather than an enforceable contract, because essential terms had yet to be agreed upon"). Whether a term is essential depends on the "particular circumstances of each case." *Willow Funding Co. v. Grencom Assocs.*, 779 A.2d 174, 182 (Conn. App. Ct. 2001).

The plaintiffs argue that they alleged facts sufficient to prove that their February 5 acceptance of PHL's terms created an enforceable agreement. We disagree. The alleged agreement reached in early February lacked an essential term—a guarantee that the insured was alive at the time of reinstatement, including the date on which the insured needed to be alive. The plaintiffs argue that this term is nonessential because, even though the later draft agreement contained a guarantee provision, no language indicates that the provision was a condition precedent to PHL's obligations. But the policy is clear that reinstatement can occur only if the insured is alive, and the later draft agreement accordingly required the plaintiffs to warrant that the insured is living. The plaintiffs thus did not plausibly plead that PHL would have entered into an agreement that permitted reinstatement even if the insured had already passed away. *See Squillante*, 266 A.3d at 950; *O'Connor v. Metro. Life Ins.*, 186 A. 618, 622 (Conn. 1936) (concluding that "[a] waiver of any requirement for the valid reinstatement of the policy is necessarily based on the assumption that the insured is still alive at the time it takes place").

It naturally follows that also essential to any agreement is a date on which the plaintiffs needed to guarantee that the insured was alive; otherwise, there would be no way for the parties to ascertain whether the insured was alive for purposes of

enforcing the agreement. Considering the facts alleged in the complaint as well as the policy and draft agreement, *see Willow Funding*, 779 A.2d at 182, we conclude that the plaintiffs did not plausibly plead that PHL would have entered into an agreement that lacked a date that determined when the insured needed to be alive.[3] *See Squillante*, 266 A.3d at 950.

The language of the early February communications also suggests that the parties did not intend to be bound. *See Fowler*, 546 A.2d at 323. When the plaintiffs agreed to the terms in PHL's email, the plaintiffs stated that they "will agree to reinstatement on the conditions below and will be in contact shortly." The use of future tense suggests that the parties did not intend to be bound by the emails. *See Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 729 (Tex. 2020) (concluding that "[t]he future-tense phrasing of the December 7 e-mails further confirms the absence of an agreement to be bound by the terms stated therein," which confirms "what is already evident from the e-mails' context"). *But see Anschutz v. Blind Tiger Brewery & Rest., LLC*, No. 105,321, 2011 WL 4444505, at *3 (Kan. App. Ct. Sept. 23, 2011) (unpublished) (concluding that an acceptance of a settlement offer that began with "[m]y client will accept . . ." was an unconditional acceptance despite using future-tense language in light of other facts).

In sum, we conclude that the alleged agreement in early February was incomplete and that the plaintiffs have failed to state a claim for breach of contract. *See Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991) (affirming a district court's dismissal of a breach-of-contract claim for failure to state a claim when essential terms were missing from an agreement).

---

[3]The facts of this case illustrate the importance of an agreement having a date on which the insured needed to be alive because the insured, in fact, died while the parties were negotiating the terms of reinstatement.

B.

We next consider the plaintiffs' claim for breach of the covenant of good faith and fair dealing as to the alleged February 5 agreement. The duty of good faith and fair dealing "is a covenant implied into a contract or a contractual relationship." *De La Concha of Hartford, Inc. v. Aetna Life Ins.*, 849 A.2d 382, 387 (Conn. 2004). "[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing." *Hoskins v. Titan Value Equity Grp., Inc.*, 749 A.2d 1144, 1146 (Conn. 2000). "To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Geysen v. Securitas Sec. Servs.*, 142 A.3d 227, 238 (Conn. 2016) (brackets omitted). "Bad faith means more than mere negligence; it involves a dishonest purpose." *Id.*

The plaintiffs have failed to state a claim for breach of the covenant of good faith and fair dealing. First, as explained in section A, there is no enforceable agreement based on the email exchange. Thus, there was no contract under which PHL could have breached the duty of good faith. *See Hoskins*, 749 A.2d at 1147.

Second, even if the parties were bound by the early February communications, the plaintiffs alleged no dishonest motive on PHL's part. "Absent allegations and evidence of a dishonest purpose or sinister motive, a claim for breach of the implied covenant of good faith and fair dealing is legally insufficient." *Alexandru v. Strong*, 837 A.2d 875, 883 (Conn. App. Ct. 2004). The plaintiffs argue on appeal that because they acted in reliance on PHL's offer to reinstate the policy and PHL still refused to reinstate it, PHL acted with a sinister motive. But all the plaintiffs allege in their complaint is that PHL "has further failed to restore the Policy such that Plaintiffs can proceed with their claim for the $500,000 death benefit payment." Therefore, nothing in the complaint suggests that PHL acted with a dishonest purpose, so the plaintiffs have not stated a claim for breach of the covenant of good faith and fair dealing.

-7-

C.

We next address the plaintiffs' declaratory-judgment claim. To state a claim for a declaratory judgment, a party must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 547 (8th Cir. 2013). The plaintiffs sought a declaration that the policy was wrongfully terminated by PHL and that PHL must therefore return the grace payment made by the plaintiffs and pay them the policy proceeds. According to the plaintiffs, the policy could not be terminated because they did not need to pay additional premiums and did not receive notice that additional premiums were owed.

The plaintiffs have not stated a claim that PHL wrongfully terminated the policy. PHL told Wells Fargo that the death-benefit guarantee had been terminated and that it was required to make additional premium payments to prevent lapse of the policy because Wells Fargo had become the policyowner and beneficiary. Although the plaintiffs now claim that they did not need to make additional premium payments, they simply provide conclusions supporting their view, rather than facts. They did not plead that they had made all premium payments required by the policy. They also did not plead that Wells Fargo had an insurable interest in the insured's life. Nor did they otherwise explain why they did not need to pay additional premiums given that termination of the death-benefit guarantee affects policy default. Finally, the plaintiffs' argument that the policy could not be terminated because they did not receive proper notice that additional payment was owed fails. The policy does not require that such notice be given before it can be terminated. Thus, the plaintiffs have failed to state a claim for declaratory judgment that the policy was wrongfully terminated.[4]

---

[4]They also argue that they have met their burden because the insurer bears the burden of proof if it attempts to avoid liability through an exclusion or termination of a policy. *See R.T. Vanderbilt Co. v. Hartford Accident & Indem. Co*., 216 A.3d 629, 641 (Conn. 2019) ("While the insured bears the burden of proving coverage, the insurer bears the burden of proving that an exclusion to coverage applies."). Though we agree that the insurer bears the burden of proof at the merits stage, the

**III.**

Lastly, we consider whether it was improper for the district court to dismiss the plaintiffs' claims with prejudice. The plaintiffs argue that the district court should not have dismissed their claims with prejudice because they alternatively requested leave to amend their complaint if the district court found that they did not state claims. The plaintiffs' request for leave to amend was in a footnote of their reply brief to the motion to dismiss. "Generally, the denial of a request to amend a complaint is reviewed by this court for an abuse of discretion." *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir. 1999). District of Minnesota Local Rule 15.1 requires that a motion to amend a pleading "be accompanied by . . . a copy of the proposed amended pleading." *See United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822-23 (8th Cir. 2009) (noting that the plaintiff failed to comply with Local Rule 15.1 in concluding that the district court did not abuse its discretion in denying leave to amend). The failure to file a formal motion to amend a complaint "is not necessarily fatal as long as [the plaintiffs] show a willingness to amend the complaint." *Wisdom*, 167 F.3d at 409. Leave to amend a complaint should be freely given to promote justice. Fed. R. Civ. P. 15(a). "[P]arties should usually be given at least one chance to amend their complaint. However, parties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim." *Id.* (citations omitted).

The district court did not abuse its discretion in dismissing the plaintiffs' claims with prejudice because the plaintiffs have not shown, either below or on appeal, how their claims can be amended to save them and they did not comply with Local Rule 15.1. *See United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d

---

plaintiffs point to nothing absolving them of complying with Federal Rule of Civil Procedure 8(a)(2). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).

748, 750 (8th Cir. 2005) ("Given [the plaintiff's] failure to communicate the substance of her proposed amendments, we hold that the district court did not abuse its discretion in denying [her] request for leave to amend.").

## IV.

For the foregoing reasons, we affirm the district court's dismissal of the plaintiffs' claims with prejudice.

_____