# United States Court of Appeals
## For the Eighth Circuit

_____

Nos. 23-2506/23-2509

_____

Secura Insurance Company, as subrogee of Molitor Equipment, LLC,
doing business as Molitor Brothers Farm

*Plaintiff - Appellant*

v.

Deere & Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 12, 2024
Filed: May 20, 2024

_____

Before GRUENDER, SHEPHERD, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

SECURA Insurance Company (Secura), appeals two district court orders, one partially dismissing its design defect breach of warranty claim against Deere &

Company (Deere),[1] the other granting summary judgment to Deere on Secura's remaining manufacturing defect warranty claim.[2]  We affirm.

**I.**

In October 2018, Molitor Equipment, LLC (Molitor) purchased two Deere Model Year 2018.5 RX tractors.  The 2018.5 RX tractors were a transitional model, and they had some of the updated features of the 2019 RX design.  Among those features, the 2018.5 RX tractors' engine compartments included three factory-drilled hexagonal holes, which would allow for the installation of shields that cover exposed portions of the engine.  Without these side shields, crop debris in the engine bay may build up and create a fire hazard.  Model Year 2019 RX tractors had engine side shields installed at the factory.  The 2018.5 RX tractors did not.

Just over one year after Molitor purchased the tractors, both caught fire in separate incidents, three weeks apart.  At the time of the fires, the tractors were covered by Deere's express manufacturer's warranty.  The warranty provided that Deere "will repair or replace, at its option, any part covered under these warranties which is found to be defective in material or workmanship . . . ."  Deere's warranty also stated the purchaser is responsible for "any service and/or maintenance not directly related to any defect covered under these warranties."  The warranty included an implied warranty disclaimer, which emphasized that Deere does not "make[ ] any warranties, representations, conditions or promises express or implied as to the quality, performance or freedom from defect . . . other than those set forth" within the warranty itself.  If Deere's express warranty "fails to correct purchaser's performance problems caused by defects in workmanship and/or

---

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

[2]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota.

materials," the warranty's remedy would be for Deere to pay the purchaser an amount not exceeding the equipment's purchase price.

Molitor had an insurance policy covering the tractors through Secura, who paid Molitor's claim. Secura then pursued Molitor's warranty claims against Deere. After Deere and Secura jointly participated in inspections of the equipment, Secura claimed the tractors were "defective and unreasonably dangerous due to Deere & Company's decision not to include the engine compartment fire shields as standard equipment for the [2018.5] RX tractors." Secura further alleged the warranty obligated Deere to either "remedy the underlying problems" or refund their purchase prices. Deere denied liability, and Secura sued, filing two substantively identical complaints.

Deere moved to dismiss the claims to the extent they alleged a design defect because Deere claimed its warranty covered only manufacturing defects. Following a hearing, the district court granted Deere's motion and dismissed Secura's breach of warranty claim to the extent it was based on a design defect theory. The district court allowed the case to proceed on a manufacturing defect theory.

At the close of discovery, the parties cross-moved for summary judgment. Deere argued that because the tractors conformed to their intended design, there was no manufacturing defect. The district court granted Deere's motion, holding Secura could not establish its breach of warranty claim because Deere's warranty covers defects only in "materials or workmanship."

## II.

Secura appeals the district court's grant of Deere's motion to dismiss—and later its motion for summary judgment—based on the language of Deere's warranty. The district court's rulings are reviewed de novo. *See GWG DLP Funding V, LLC v. PHL Variable Ins. Co.*, 54 F.4th 1029, 1033 (8th Cir. 2022) ("We review [Federal Rule of Civil Procedure] 12(b)(6) dismissals *de novo*."); *Bruce Martin Constr., Inc.*

-3-

*v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) ("We review a district court's grant of summary judgment de novo."). Because we are sitting in diversity, Minnesota substantive law governs the interpretation of Deere's warranty. *See Bruce Martin Constr.*, 735 F.3d at 752; *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589–90 (8th Cir. 2022).

## A.

The district court partially dismissed Secura's claim under Rule 12(b)(6) because it held Deere's warranty against defects in "material or workmanship" did not cover design defects. While no Minnesota court has defined the terms "material" or "workmanship," various reasons lead us to agree with the district court's conclusion. *See Coba v. Ford Motor Co.*, 932 F.3d 114, 121–122 (3d Cir. 2019) (determining the meanings of "material" and "workmanship" by examining the words' definitions, products liability case law, and other court decisions). First, we look to the words' definitions. *See Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 301 (Minn. 2014) ("We construe nontechnical words and phrases according to their plain and ordinary meanings . . . and we often look to dictionary definitions to determine the plain meanings of words . . . ."). "Workmanship" is "the execution or manner of making or doing something." *Workmanship*, Webster's Third New Int'l Dictionary 2635 (2002).[3] And "materials" are "the basic matter (as metal, wood, plastic, fiber) from which the whole or the greater part of something physical (as a machine, tool, building, fabric) is made." *Material*, Webster's Third New Int'l Dictionary 1392 (2002). These definitions concern the physical construction or creation of an object. *See Coba*, 932 F.3d at 121. A "design" is different. It is "a

---

[3]As the Minnesota Supreme Court frequently refers to this dictionary and other editions when determining the meaning of terms, we will do the same. *See, e.g.*, *Fordyce v. State*, 994 N.W.2d 893, 899 (Minn. 2023); *Matter of Surveillance & Integrity Rev.*, 999 N.W.2d 843, 856 (Minn. 2024); *Schwanke v. Minnesota Dep't of Admin.*, 851 N.W.2d 591, 593 (Minn. 2014); *In re Reichmann Land & Cattle, LLP*, 867 N.W.2d 502, 507 (Minn. 2015).

preliminary sketch or outline (as a drawing on paper or a modeling in clay) showing the main features of something to be executed." *Design*, Webster's Third New Int'l Dictionary 611 (2002). Designs thus relate to the planning stage, where blueprints or models are created to demonstrate how the object should be built. *See Coba*, 932 F.3d at 121. Thus, relating to defective products, flaws in materials and workmanship refer to mistakes made during the construction or assembly of a product, while defects in design refer to inadequacies in the plans used to construct or assemble a product. *See id.*; *see also Bruce Martin Constr.*, 735 F.3d at 753.

Second, Minnesota products liability case law reinforces this distinction between design and manufacture defects. For example, in *Bilotta v. Kelley Co.*, the Minnesota Supreme Court specified that a manufacturing defect arises when the actual product does not match its intended design and "is proved by focusing on *the condition* of the product." 346 N.W.2d 616, 622 (Minn. 1984) (emphasis added).[4] In a design defect dispute, however, "there is no doubt that the product is in the condition intended by the manufacturer," but the plaintiff claims the design is defective. *Id.* Many other courts have affirmed these distinctions in products liability law. *See, e.g.*, *Coba*, 932 F.3d at 121–22 (listing other cases noting this distinction).

Third, many other courts agree that warranties for defects in "material or workmanship" do not include design defects in breach-of-warranty claims. *E.g.*, *Bruce Martin Constr.*, 735 F.3d at 754; *Coba*, 932 F.3d at 122; *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 520, 526–27 (7th Cir. 2003); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668–69 (9th Cir. 2013); *In re Hardieplank Fiber Cement Siding Litig.*, 284 F. Supp. 3d 918, 933 (D. Minn. 2018); *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018); *In re Toyota Motor Corp.*

---

[4]Although *Bilotta* deals with products liability in tort and not breach of a contractual warranty, "the two doctrines are conceptually similar in that both concern liability for product defects." *Bruce Martin Constr.*, 735 F.3d at 753.

*Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1180–81 (C.D. Cal. 2010).

Secura cites no authority suggesting that the words "material" or "workmanship" mean anything different. Rather, it claims their meaning cannot be determined in isolation or without discovery. But the interpretation of an unambiguous contract is a question of law that district courts may decide before discovery at the motion to dismiss stage. *Union Elec. Co. v. Sw. Bell Tel. L.P.*, 378 F.3d 781, 786 (8th Cir. 2004); *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 916–17 (Minn. 1990) ("Unless ambiguity exists, generally the construction and effect of contract language is a question of law."). And extrinsic evidence cannot be used to vary the terms of an unambiguous writing. *Alpha Real Est. Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312 (Minn. 2003). *Accord MTS Co. v. Taiga Corp.*, 365 N.W.2d 321, 325 (Minn. Ct. App. 1985) ("When contract terms are clear and the contract is complete . . . extrinsic evidence may not be admitted to show an ambiguity."). Because the terms of the warranty are complete and unambiguous, the district court correctly disregarded extrinsic evidence when interpreting the warranty's terms. And because defects in "material or workmanship" do not include design defects, the district court was also correct to limit discovery only to matters involving Secura's manufacturing defect claim. For these reasons, the district court correctly dismissed Secura's design defect warranty claim.[5]

---

[5]Secura further claims Deere's warranty disclaimer is an implicit acknowledgment of additional coverage. Specifically, Secura argues that because manufacturers in Minnesota have a duty in tort to manufacture a reasonably safe product Deere could not disclaim a supposed implied warranty of non-defectiveness. But Minnesota expressly permits disclaimers of implied warranties. *See* Minn. Stat. Ann. § 336.2-316(2). And Secura's interpretation would contradict and render meaningless other terms of the warranty. *See Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990) (Courts do not adopt interpretations that negate or render superfluous any provision.).

**B.**

The elements for a breach of warranty are the existence of a warranty, breach of the warranty, and causation of damages. *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 730 (Minn. 1990). The parties agreed Deere's warranty covered the tractors. But the district court determined the warranty covered only manufacturing defects. For this reason, Deere was entitled to summary judgment if Secura could not demonstrate that the absence of engine side shields was a manufacturing defect covered by the warranty.

As stated above, a manufacturing defect arises when the actual product does not match the product's *intended design*. *See Bilotta*, 346 N.W.2d at 622. As Secura has failed to point to any evidence showing Deere *intended* the 2018.5 RX tractors to have engine side shields, we cannot say there was a manufacturing defect. From the standpoint of most farmers—Deere's customers—the tractors may have been poorly designed. But that Deere made them in accordance with that poor design does not transform a design defect into a manufacturing defect. And the decision to allow Deere to disclaim implied warranties is a policy matter for the legislative branch outside the role of this court. The district court correctly granted summary judgment to Deere.

**III.**

The district court correctly dismissed Secura's warranty claim relating to design defects and granted summary judgment to Deere on Secura's remaining warranty claim asserting a manufacturing defect. We affirm.

_____