# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1773

SECURA Insurance Company, as subrogee
of Lance Goettl d/b/a TLG Farm Partnership,
Appellant,

vs.

Deere & Company,
Respondent,

Kibble Equipment LLC,
Respondent.

**Filed August 19, 2024**
**Affirmed in part, reversed in part, and remanded; motion denied**
**Harris, Judge**

Blue Earth County District Court
File No. 07-CV-21-2292

David J. Taylor, Yost & Baill, LLP, Minneapolis, Minnesota (for appellant)

Timothy J. Mattson, Bowman and Brooke, LLP, Minneapolis, Minnesota; and

Amanda E. Heitz (pro hac vice), Bowman and Brooke, LLP, Phoenix, Arizona (for respondent Deere & Company)

Mark T. Berhow, Alexander M. Baggio, Hinshaw & Culbertson, LLP, Minneapolis, Minnesota (for respondent Kibble Equipment LLC)

        Considered and decided by Harris, Presiding Judge; Schmidt, Judge; and Kirk,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SYLLABUS**

A warranty for defects in "material or workmanship" covers only manufacturing defects and does not include design defects such as a manufacturer's deliberate addition or omission of a challenged component.

**OPINION**

**HARRIS**, Judge

Appellant-insurer brought this subrogation action following a tractor fire, asserting claims for breach of express warranty against respondent-manufacturer and negligence against respondent-dealership. Insurer alleged that the fire was caused by crop debris that accumulated in the engine compartment due to the lack of engine side shields. The district court granted the manufacturer's motion to partially dismiss the breach-of-express-warranty claim and later granted the manufacturer's and the dealership's motions for summary judgment on all claims.

On appeal, insurer argues that the district court erred by interpreting manufacturer's warranty to exclude design defects and by requiring expert testimony to establish dealership's standard of care. Because we conclude that the district court correctly interpreted the warranty, we affirm the dismissal of the breach-of-express-warranty claim against the manufacturer. We conclude, however, that the district court erred by requiring expert testimony about the standard of care to sustain the negligence claim against the dealership. We therefore reverse the dismissal of the negligence claim and remand for further proceedings.

**FACTS**

After paying a claim of its insured, SECURA as a subrogee sued, following a fire which destroyed a Deere Model Year 2018.5 RX tractor manufactured by respondent Deere & Company and obtained from respondent Kibble Equipment LLC, an equipment dealership.[1] The following facts are based on the record at summary judgment and presented in the light most favorable to SECURA as the nonmoving party. *See Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 628 (Minn. 2017) (describing summary-judgment standard).

Deere manufactured the Model Year 2018.5 RX tractors while transitioning its production facility to make its Model Year 2019.5 RX tractors, and thus, the 2018.5 tractors included some updated features of the 2019.5 tractors. Specifically, the 2018.5 tractor frames included factory-drilled holes that allowed for the installation of shields on the sides of the engine compartment. Without such shields, crop debris could accumulate in the engine compartment and create a fire hazard. The 2019 tractors came with engine shields installed. Although 2018.5 tractors did not come with engine shields, Deere created an optional program to install engine shields on 2018.5 tractors in August 2019 and sent notice of the program to dealerships such as Kibble. The program information identified the potential for debris to accumulate in the engine compartment.

In November 2019, Kibble provided a Deere 2018.5 tractor that did not have engine shields to TLG Farm, under its equipment service plan called the Kibble Equipment

---

[1] "John Deere" and "Deere & Company" are the same company under the terms of its warranty.

3

Assurance Plan, while one of TLG Farm's tractors underwent repairs. The next day, the tractor caught fire and was destroyed.

Following the fire, SECURA made insurance payments to TLG Farm. SECURA then sought to enforce Deere's warranty for the tractor. The warranty stated, "Under these warranties, John Deere will repair or replace, at its option, any part covered under these warranties which is found to be defective in material or workmanship during the applicable warranty term." After SECURA, Deere, and Kibble participated in inspections of the tractor, SECURA's expert determined that the cause of the fire was crop debris igniting in the engine compartment. Deere's expert could not conclusively state or rule out that the fire was caused by crop debris.

SECURA served a complaint on Deere and Kibble. The complaint alleged that Deere breached its warranty by providing a machine defective in design and/or manufacture due to the lack of engine shields and that Deere failed to comply with its obligations under the warranty. In addition, SECURA brought a negligence claim against Kibble alleging that Kibble "fail[ed] to provide a rental tractor with the fire shields equipped."

In November 2021, Deere moved for partial dismissal of SECURA's breach-of-express-warranty claim under Minnesota Rules of Civil Procedure 12.02(e) for failure to state a claim upon which relief can be granted. Deere argued that SECURA's claim should be dismissed to the extent that it is based on an alleged design defect because Deere's warranty—a warranty for defects in "material or workmanship"—covered only manufacturing defects, not defects based on intentional design decisions. The district court

agreed that the limited warranty unambiguously excluded design defects and thus granted the partial dismissal of SECURA's claim for breach of express warranty. The district court also denied SECURA's motion to amend the complaint to add strict-liability and negligence claims against Deere.

Deere moved for summary judgment on the breach-of-express-warranty claim, arguing that the engine shields were not intended to be included as part of the tractor and thus their absence did not qualify as a manufacturing defect. Kibble moved for the summary-judgment dismissal of the negligence claim. Kibble argued it was entitled to summary judgment because SECURA's negligence claim was barred by (1) the economic-loss doctrine, (2) an exculpatory clause in the rental agreement for the tractor, (3) an indemnity clause in the rental agreement for the tractor, and (4) SECURA's failure to establish the applicable standard of care.

SECURA opposed both motions. With respect to Deere's motion, SECURA argued that the limitation in Deere's express warranty violated Minnesota law imposing a nondelegable duty to design a reasonably safe product. With respect to Kibble's motion, SECURA argued that the alleged rental agreement for the tractor was not controlling and thus SECURA's recovery was not barred by the economic-loss doctrine or clauses in that agreement. SECURA also argued that it presented sufficient evidence for a jury to find that Kibble acted negligently by providing a tractor lacking engine shields without expert testimony.

Following a hearing, the district court dismissed both claims. The district court determined that Deere was entitled to summary judgment on the breach-of-express-

warranty claim because there was no genuine dispute that the tractor had a manufacturing defect or that SECURA suffered damages based on Deere's alleged failure to comply with its warranty obligations. The district court also determined that Kibble was entitled to summary judgment because "SECURA cannot establish a standard of care required for a negligence claim." The district court rejected Kibble's arguments for summary judgment based on the economic-loss doctrine, the exculpatory clause, and the indemnity clause.

SECURA appeals.[2]

## ISSUES

I.      Did the district court err by dismissing SECURA's breach-of-express-warranty claim alleging a design defect?

II.     Did the district court err by granting summary judgment on SECURA's negligence claim based on the absence of expert testimony to establish Kibble's standard of care?

---

[2] On appeal, SECURA moved to supplement the record with a portion of the deposition of Deere's expert pursuant to Minnesota Rules of Civil Appellate Procedure 110.05. The appellate record consists of "[t]he documents filed in the trial court, the exhibits, and the transcript of the proceedings." Minn. R. Civ. App. P. 110.01. SECURA concedes that this portion of the deposition transcript was not submitted to the district court as part of the summary-judgment proceedings. Because the transcript was not presented to the district court, it is not properly before this court on our review of the summary-judgment decision. *See Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988) ("An appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below"). The motion to supplement the record is denied.

ANALYSIS

On appeal, SECURA challenges the district court's grant of Deere's motion to dismiss the design-defect breach-of-express-warranty claim and Kibble's motion for summary judgment on the negligence claim. We address each claim in turn.

## I. The district court did not err by dismissing SECURA's breach-of-express-warranty claim alleging a design defect.

SECURA argues that the district court erred by partially dismissing its breach-of-express-warranty claim under Minnesota Rule of Civil Procedure 12.02(e). In its complaint, SECURA alleged that Deere breached its warranty by manufacturing a tractor that was defective in design or in manufacture. The district court partially dismissed that claim, determining that Deere's warranty did not cover design defects and thus that SECURA could not state a claim for breach of warranty on that basis. We apply de novo review to the district court's rule 12 dismissal. *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 606 (Minn. 2014). We consider only the facts alleged in the complaint and the written warranty, which was referred to in the complaint and is central to SECURA's claim. *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 180 (Minn. App. 2012), *rev. denied* (Minn. Apr. 25, 2012).

SECURA's breach-of-express-warranty claim alleged that the absence of engine shields on the tractor was a design or manufacturing defect. A claim based on a design defect challenges "a consciously chosen design" in which "[t]he manufacturer has deliberately added or omitted the challenged component." *Bilotta v. Kelley Co.*, 346 N.W.2d 616, 622 (Minn. 1984); *see also* Restatement (Third) of Torts: Product Liability

7

§ 2(b) (1998) (explaining a design defect exists "when the foreseeable risks of harm . . . could have been reduced or avoided by the adoption of a reasonable alternative design" and the failure to use the alternative design "renders the product not reasonably safe"). By contrast, "[a] manufacturing defect in the products liability context means 'the product departs from its intended design.'" *Harrison ex rel. Harrison v. Harrison*, 733 N.W.2d 451, 455 n.2 (Minn. 2007) (quoting Restatement (Third) of Torts: Product Liability § 2(a) (1998)). Accordingly, such claims allege "inadvertent manufacturing flaws" for which "an objective standard exists—the flawless product—by which a jury can measure the alleged defect." *Bilotta*, 346 N.W.2d at 622.

The sole issue related to the breach-of-express-warranty claim on appeal is whether the district court properly interpreted Deere's warranty to exclude design defects. The interpretation of a warranty presents an issue of contract interpretation. *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 916-17 (Minn. 1990). We give contract language its plain meaning and interpret terms "in the context of the entire agreement." *Id.* When interpreting a contract, we first consider whether the contract is ambiguous, which presents "a question of law that we review de novo." *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010). "The terms of a contract are ambiguous if they are susceptible to more than one reasonable interpretation." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018).

The relevant portion of the warranty states: "Under these warranties, John Deere will repair or replace, at its option, any part covered under these warranties which is found

8

to be defective in material or workmanship during the applicable warranty term." The warranty also provides:

> To the extent permitted by law, neither John Deere nor any company affiliated with it makes any warranties, representations, conditions or promises express or implied as to the quality, performance or freedom from defect of the Equipment covered by these warranties other than those set forth above, AND NO STATUTORY OR IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS ARE MADE.

The parties agree that Deere expressly warrants that parts are not "defective in material or workmanship" and affirmatively disclaims all other warranties. Thus, we must determine whether the phrase "defective in material or workmanship" includes design defects.

The warranty does not define the terms "material" and "workmanship." To determine the plain meaning of undefined terms, we often use dictionary definitions. *See Laymon v. Minn. Premier Props., LLC*, 913 N.W.2d 449, 453 (Minn. 2018) ("[W]e may consider dictionary definitions to determine a word's common usage."); *see also Bank Midwest, Minn., Iowa, N.A. v. Lipetzky*, 674 N.W.2d 176, 179-81 (Minn. 2004) (considering dictionary and statutory definitions to determine the "common usage" of a contract term). "Material" means "[t]he substance or substances out of which a thing is or can be made." *The American Heritage Dictionary of the English Language* 1083 (5th ed. 2018). And "workmanship" is defined as "[t]he skill of a craftsperson or artisan" or "[t]he quality of something made, as by an artisan." *American Heritage*, *supra*, at 1996. Based on these definitions, a part is "defective in material or in workmanship" if the product contains flaws due to departures from the intended substance or intended manufacturing

9

process. Thus, the phrase "defective in material or workmanship" squarely aligns with a manufacturing defect and does not implicate the intentional omission or inclusion of a challenged component that characterizes a design defect.

SECURA does not identify an alternative reasonable interpretation of the phrase "defective in material or workmanship" that incorporates a manufacturer's intentional design decisions, and SECURA does not argue that warranties for defects in material or workmanship generally include design defects. *Cf.* Minn. Stat. § 336.2-202(a) (2022) (stating that terms "may be explained or supplemented . . . by course of performance, course of dealing, or usage of trade"). Instead, SECURA relies on deposition testimony and other parts of the warranty to assert that the warranty as a whole can reasonably be read to cover design defects. We are unpersuaded.

First, extrinsic, evidence cannot create ambiguity in the plain language of the warranty. *See Staffing Specifix*, 913 N.W.2d at 692 ("If the district court determines that a contract is ambiguous, it may admit parol, or extrinsic, evidence of the parties' intent."). Thus, the deposition testimony is not relevant to whether the warranty is ambiguous. Second, neither SECURA nor our review of the warranty identifies any language suggesting that the warranty extends to defects other than manufacturing defects. To the contrary, the warranty states that Deere disclaims "any warranties, representations, conditions or promises express or implied as to the quality, performance or freedom from defect of the Equipment covered by these warranties other than" the limited express warranty. As a result, SECURA has not provided a reasonable interpretation of the warranty that covers design defects.

10

Our conclusion is reinforced by federal caselaw interpreting warranties for defects in "workmanship" or "material," which uniformly recognizes that such covered defects are not design defects. *See, e.g.*, *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) (explaining that "case law from outside Indiana reflects an understanding that defects in material and workmanship refer to departures from a product's intended design while design defects refer to the inadequacy of the design itself"). In fact, the Eighth Circuit recently applied Minnesota law to the interpretation of Deere's warranty and similarly concluded that the warranty does not cover design defects. *SECURA Ins. Co. v. Deere & Co.*, 101 F.4th 983, 986-87 (8th Cir. 2024). The Eighth Circuit reasoned that, based on the common meaning of "materials" and "workmanship," "flaws in materials and workmanship refer to mistakes made during the construction or assembly of a product, while defects in design refer to inadequacies in the plans used to construct or assemble a product." *Id.* at 987. Thus, the Eighth Circuit concluded, consistent with our reading, that SECURA could not state a claim for breach of warranty based on alleged design defects. *Id.* at 988.

Finally, SECURA invites us to conclude that a manufacturer may not exclude design defects from a warranty, relying on Minnesota caselaw holding that manufacturers have a duty to design a reasonably safe product. *See Bilotta*, 346 N.W.2d at 624 (adopting rule "that a manufacturer may not delegate its duty to design a reasonably safe product"). But duty is required to establish liability in tort, not warranty, and thus that caselaw is not relevant to SECURA's breach-of-express-warranty claim. And unlike the prohibition against delegating the duty to design a safe product, Minnesota law allows manufacturers

11

to exclude or modify any implied warranties of merchantability or fitness. Minn. Stat. § 336.2-316 (2022). Likewise, regardless of the merits of SECURA's public-policy arguments, such arguments are not the province of this court. *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987) (rejecting argument that this court should extend the law to recognize an implied warranty of fitness and explaining that "the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court"), *rev. denied* (Minn. Dec. 18, 1987).

In sum, we conclude that Deere's warranty for defects in "workmanship or material" covers only manufacturing defects and unambiguously excludes design defects such as a manufacturer's deliberate addition or omission of a challenged component. The district court therefore did not err by granting Deere's motion to dismiss SECURA's design-defect warranty claim.

**II.    The district court erred by granting summary judgment on the basis that SECURA cannot establish a standard of care required for a negligence claim against Kibble.**

SECURA also alleged that Kibble acted negligently by providing a tractor without engine shields. The district court determined that SECURA failed to establish the applicable standard of care—that is, the scope of Kibble's duty to TLG Farm—and thus granted Kibble's motion for summary judgment. "We review the grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in its application of law." *Montemayor*, 898 N.W.2d at 628 (quotation omitted). "[S]ummary judgment is only proper if no genuine issue of material fact exists," and "we view the evidence in the light most favorable to the nonmoving party

and resolve all doubts and factual inferences against the moving party." *Rygwall, as Tr. for Rygwall v. ACR Homes, Inc.*, 6 N.W.3d 416, 427 (Minn. 2024) (quotations omitted).

"To recover for a claim of negligence, a plaintiff must prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011). Generally, a person "has a duty to do what a reasonable person would do under the same or similar circumstances"—that is, to exercise a "reasonable-person standard of care." *Blatz v. Allina Health Sys.*, 622 N.W.2d 376, 384 (Minn. App. 2001). "A person providing professional services, however, is under a duty to exercise such care, skill, and diligence as persons in that profession ordinarily exercise under like circumstances." *Id.*; *see also, e.g.*, *Rygwall*, 6 N.W.3d at 429 ("The primary difference between a claim of medical malpractice and one of ordinary negligence is that health care professionals are judged against the care with which a reasonable health care professional would act rather than the care with which a reasonable ordinary person would act.").

"[I]f it would be speculative for the factfinder to decide the issue of negligence without having the benefit of expert testimony on the standard of care, then expert testimony is necessary." *Atwater Creamery Co. v. W. Nat. Mut. Ins. Co.*, 366 N.W.2d 271, 279 (Minn. 1985). But such testimony is not required when "the conduct complained of can be evaluated adequately by a jury in the absence of expert testimony." *Guzick v. Kimball*, 869 N.W.2d 42, 49 (Minn. 2015) (quoting *Hill v. Okay Constr. Co.*, 252 N.W.2d 107, 116 (Minn. 1977)). Thus, when "the acts or omissions complained of are within the general knowledge and experience of lay persons, expert testimony is not necessary to

13

establish a standard of care." *Atwater*, 366 N.W.2d at 279. We review de novo whether expert testimony is required to establish an element of a plaintiff's claim of negligence. *Guzick*, 869 N.W.2d at 46-47.

SECURA argues, and we agree, that the district court erred by determining that expert testimony was required to establish Kibble's duty of care to TLG Farm. Undisputed facts in the record includes evidence sufficient to establish that the accumulation of crop debris near the exhaust manifold of the 2018.5 tractor was a known fire risk, and that Deere created an optional program to install engine shields that identified their purpose as preventing crop debris from accumulating near the exhaust manifold. The record, and the reasonable inferences from the record, are also sufficient to show that Kibble was aware of the program to install the engine shields and the risk of fire from crop debris. Furthermore, one of the partners of TLG Farm testified in a deposition that a Kibble mechanic told him that Kibble had other tractors with engine shields at the time that Kibble provided TLG Farm the tractor without such shields.[3] And although there may be downsides to the shields, evidence about those competing considerations—cost, more difficulty cleaning, and greater heat in the cabin—is in the record. Given these circumstances, a jury is well-equipped to form its own conclusions regarding the reasonableness of Kibble's conduct.

---

[3] SECURA and Kibble dispute the admissibility of these statements. Because the district court did not rule whether this evidence was admissible, we decline to do so in the first instance. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented [to] and considered by the trial court in deciding the matter before it." (quotation omitted)).

14

We are unpersuaded otherwise by Kibble's reliance on *Atwater*, a Minnesota case in which the supreme court concluded that expert testimony was required. In that case, a business sued its insurance agent, alleging that the agent acted negligently by failing to proactively identify and address a gap in coverage. 366 N.W.2d at 274-79. The supreme court explained that "[t]he question of what standard applies is whether an insurance agent, generally authorized to procure insurance for a business, has an ongoing affirmative duty to carefully check over the current coverage, to notify the business of gaps, and to search out insurance to fill those gaps." *Id.* at 279. Although Kibble argues that these circumstances are analogous to *Atwater* because the engine-shield program was classified as optional by Deere, we are unconvinced. Here, unlike in *Atwater*, the alleged negligence involves a known hazard (the risk of fire from debris near hot surfaces), and a known solution (engine shields to prevent debris from blowing into the engine compartment). Moreover, we note that even if SECURA had provided deposition testimony from other dealerships about their practice with respect to option programs or the engine shields, such testimony would not necessarily be dispositive. *See Radel v. Bloom Lake Farms*, 553 N.W.2d 109, 111 (Minn. App. 1996) ("Even if other cattle brokers had testified as to what the industry practice was in giving advice and examining records, that testimony would not necessarily have been dispositive."), *rev. denied* (Minn. Oct. 29, 1996).

We agree with SECURA that the district court improperly conflated SECURA's burden to prove causation (whether the absence of engine shields caused the fire) with SECURA's burden to establish Kibble's duty of care (that a reasonable dealership would have provided TLG Farm with a tractor with such shields). SECURA does not dispute the

15

district court's assessment that fire causation is a complex issue outside the knowledge of a jury. But neither the district court nor Kibble provided any authority suggesting that the complexity of determining *causation* is relevant to whether a plaintiff must provide expert testimony to establish the *standard of care*. Rather, the reasonableness of the defendant's conduct is a separate inquiry from whether expert testimony is necessary to determine whether that conduct caused the plaintiff's harm. *Hill*, 252 N.W.2d at 116-17 (concluding that the jury could "properly evaluate" attorney's allegedly negligent conduct without expert testimony and noting that the issue of causation was a "separate question"). And we note that the record contains multiple expert reports submitted by SECURA opining that the fire was caused by the absence of engine shields and resulting accumulation of crop debris.

We underscore that our conclusion with respect to the necessity of expert testimony regarding Kibble's standard of care is not an assessment of SECURA's likelihood of success at trial.[4] Kibble may disagree with SECURA's assessment of the reasonableness of providing a Deere 2018.5 tractor without the fire shields and is free to make that argument to the jury. In light of the unique facts of the case which includes a well-developed record that shows the existence of an optional product enhancement program to prevent crop-debris accumulation and the widely known risk of fire from that accumulation, and Kibble's allegedly negligent act of providing a Deere 2018.5 tractor without engine shields, while having tractors with engine shields available, we conclude

---

[4] Our conclusion is also not an assessment of SECURA's likelihood of success at trial on the issue of causation.

that SECURA provided sufficient evidence that, when viewed in the light most favorable to SECURA, would allow a jury to determine that Kibble acted negligently by providing SECURA a Deere 2018.5 tractor without engine shields.

In sum, we conclude that based on the unique circumstances of this case the district court erred by determining that the expert testimony was required to establish Kibble's standard of care. As a result, the district court erred by granting Kibble's motion for summary judgment and dismissing SECURA's negligence claim.

## DECISION

Because the district court did not err by interpreting Deere's warranty for defects in "material or workmanship" to exclude Deere's intentional design decisions, we affirm the dismissal of SECURA's breach-of-express-warranty claim. But because the district court erroneously determined that expert testimony was required to establish Kibble's standard of care, we reverse the grant of summary judgment in favor of Kibble and dismissal of SECURA's negligence claim and remand for further proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded; motion denied.**